AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Brian Patrick Durning<br><br>Defendant(s) | Case No. 6:22-mj-16056 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____June 24, 2022____ in the _special aircraft jurisdiction of the United States_ the defendant violated:

| Code Section | Offense Description |
|---|---|
| 49 U.S.C. § 46506 and 18 U.S.C. § 2244 | Abusive sexual contact of a minor on aircraft in the special aircraft jurisdiction of the United States. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Senior Inspector Anthony Helico, USMS
Printed name and title

Sworn to before me ~~via Zoom~~ in person and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d)

Date: 6/24/22

_____
Judge's signature

City and state:   Orlando, FL

Leslie Hoffman Price, U.S. Magistrate Judge
Printed name and title

STATE OF FLORIDA            CASE NO. 6:22-mj- 1656

COUNTY OF ORANGE

## AFFIDAVIT IN SUPPORT OF THE ISSUANCE OF A CRIMINAL COMPLAINT

I, Tony Helicio, Senior Inspector with the United States Marshals Service, do swear as follows:

1. I am employed as a Senior Inspector/Deputy United States Marshal (DUSM) for the United States Marshals Service. I am presently assigned to the FBI Joint Terrorism Task Force (JTTF) assigned as an Airport Liaison Agent under the Civil Aviation Security Program. I have been employed with the United States Marshals Service for 22 years. Prior to being sworn in as a DUSM, I completed a 13-week Criminal Investigator Training Program followed by a 6-week Basic DUSM training program at the Federal Law Enforcement Training Center. During my training at the Federal Law Enforcement Training Center and throughout my career, I have received training in criminal investigations, interviews, case management, and criminal apprehension. Prior to my employment with the United States Marshals Service, I was employed with the Immigration & Naturalization Service in San Diego, California for three years. I also served in the U.S. Marine Corps Reserve from 1990 to 1998.

2. This affidavit is made for the purpose of supplying probable cause to support a criminal complaint against Brian Patrick Durning for abusive sexual

contact with a minor in the special aircraft jurisdiction of the United States, in violation of 49 U.S.C. § 46506 and 18 U.S.C. § 2244(a)(3).

3. The information contained in this affidavit is information of my personal knowledge or information known by me and given to me by individuals involved in this investigation of which they have personal knowledge. Additionally, this information is limited to the information necessary to establish probable cause and does not necessarily contain all of the knowledge that I have in reference to this investigation.

**PROBABLE CAUSE**

4. At approximately 9:10 a.m. on June 24, 2022, Federal Air Marshal (FAM) David Darcangelis, a Federal Bureau of Investigation (FBI) Task Force Officer, and I arrived at Gate 77 at the Orlando International Airport (OIA) in response to a notification that we had received from the Orlando Police Department (OPD). OPD had advised me that an incident requiring FBI response had occurred on an aircraft that had just landed at OIA.

5. I was advised that Brian Patrick Durning had molested a minor while flying aboard Delta Flight 2954 from Los Angeles to Orlando on the morning of June 24, 2022. The flight departed Los Angeles at 11:36 p.m. (Pacific time) on June 23, 2022, and landed at approximately 7:32 a.m. (Eastern time) on June 24, 2022.

6. MV is older than 12 years old, and younger than 16 years old.

7. Durning is 51 years old.

**Interview of MV**

8. I interviewed the minor victim ("MV"), who stated that while the aircraft was in flight (i.e. the cabin doors were closed), she was seated in a middle seat. Durning was seated to MV's left, next to the aisle. S.J. was seated to MV's right, next to the window.

9. MV stated that after the flight took off, Durning ordered an alcoholic beverage. After consuming the drink, Durning began to cough and sneeze on MV. At some point thereafter, Durning began to touch MV's hair and neck. He also tried to put his arm around MV. When he did so, MV tried to lean away from Durning.

10. Durning also reached over with his right hand to touch her inner left thigh, moving her thigh toward him, as he called her "honey-boo." He then started to move his hand up her inner left thigh toward her groin area. He then pushed his finger into her vagina, over her clothing. MV froze as a result of Durning's conduct.

**Interview of S.J.**

11. I also interviewed S.J. (who was not a travel companion for MV; they just happened to be seated next to each other). S.J. stated that she slept for some time on the flight. She did not observe Durning sneeze or cough on MV. Nor did she observe Durning touch MV's hair or neck.

12. Upon waking up from a nap, S.J. looked to the left, in the direction of the aisle. At that time, she saw Durning quickly move his right hand away from inside MV's thigh. S.J. asked MV, "Did he touch you?" and MV responded affirmatively. S.J. observed MV shaking and crying at that time.

13. S.J. offered to switch seats with MV. After they switched seats, S.J. sat in the middle (next to Durning), and MV sat next to the window.

14. S.J. called for a flight attendant, and called for MV's mother, who was seated two rows in front of MV, S.J., and Durning. S.J. told Durning not to talk to MV "because you're scaring her." At that time, Durning attempted to touch S.J.'s breast.

### Interview of MV's mother

15. I interviewed MV's mother, who stated that she had been unable to sit with both MV and her other minor child due to seating reservation issues.

16. MV's mother stated that at some point during the flight, S.J. called for her attention. When MV's mother stood up and turned back toward where S.J., MV, and Durning were seated, she (MV's mother) saw MV mouth the words, "He touched me." At that time, MV's mother walked back to MV's seating row to confront the defendant. When she arrived, she noticed that the zipper of the defendant's pants were unzipped.

17. Shortly thereafter, a flight attendant reassigned seats to remove Durning from MV's presence.

### Interview of defendant

18. FAM Darcangelis interviewed Durning after the airplane landed at OIA. Durning stated that he had had "one to two beers" in the airport before boarding the flight in Los Angeles.

19. Durning stated that during the flight, he took an Ambien pill and had one glass of white wine.

20. Durning stated that he fell asleep. He stated that the next thing he remembered was someone waking him up and asking him to switch seats.

## CONCLUSION

13. Based on the foregoing, probable cause exists to believe that Brian Patrick Durning knowingly engaged in sexual contact with a minor who had attained the age of 12 years, but not attained the age of 16 years, while in the special aircraft jurisdiction of the United States, in violation of 49 U.S.C. § 46506 and 18 U.S.C. § 2244(a)(3).

Anthony Helicio
Senior Inspector
United States Marshals Service

Affidavit submitted by email and attested to me as true and accurate ~~by~~ in person ~~video conference consistent with Fed. R. Crim. P. 4.1 and 4(d)~~ before me this 24 day of June, 2022.

LESLIE HOFFMAN PRICE
United States Magistrate Judge

5