UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

     v.                      CASE NO. 6:22-cr-102-WWB-RMN

BRIAN PATRICK DURNING

## UNITED STATES MOTION TO ALLOW USE OF A CERTIFIED CRISIS RESPONSE CANINE DURING JURY TRIAL

The United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, through Assistant United States Attorney Courtney D. Richardson-Jones, hereby respectfully moves this Court to allow the use of a certified crisis response canine in the witness room before and after the child victim's testimony, in the courtroom during Brian Patrick Durning's trial beginning on June 20, 2023, and any pre-trial hearings regarding the use of the crisis response canine. The Defense objects to the use of the crisis response canine during the trial.

The Indictment charges the Defendant with three offenses: 1. Abusive Sexual Contact with a Child as defined by 18 U.S.C. § 2244(a)(3), in violation of 49 U.S.C. § 46506; 2. Assault Resulting in Substantial Bodily Injury to an Individual who has not Attained the age of 16 years, as defined by 18 U.S.C. § 113(a)(7), in violation of 49 U.S.C. § 46506; and 3. Assault Resulting in Serious Bodily Harm, as defined by 18 § 113(a)(6), in violation of 49 U.S.C. § 46506. Specifically, the Defendant is charged with sexually touching the child victim while traveling on a Delta airlines flight from Los Angeles, California to Orlando, Florida. The touching caused

significant trauma to the child victim. During the time of the sexual abuse the minor victim had just turned 13 years old. She will still be 13 years old at the time of the trial in this case. The child victim has expressed experiencing significant anxiety in connection with the anticipated testimony at trial. The child victim and her parents have requested that a certified crisis response canine be with the child victim at the witness stand during the trial, during breaks in testimony, and before and after testimony.

## ANALYSIS

The 2004 Crime Victim Rights Act (CVRA) gives federal crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8). Furthermore, the CVRA makes it clear that these rights are not simply symbolic, but rather are enforceable by use of a writ of mandamus in district court. 18 U.S.C. § 3771(d)(3). Several courts have held that the rights under the CVRA are meaningful and enforceable in many contexts. *United States v. Patkar*, Cr. No. 06-00250, 2008 WL 233062, at *6 (D. Hawaii 2008) (holding that the CVRA "was intended to provide meaningful rights, and not a simple laundry list of aspirational goals as to how the government and courts should treat victims"); *see also United States v. Heaton*, 458 F. Supp. 2d 1271, 1272 (D. Utah 2006) (holding that § 3771(a)(8) requires a court to consider the views of the victim before dismissing an indictment pursuant to Fed. R. Crim. P. 48(a)); *United States v. Turner*, 367 F. Supp. 2d 319, 335 (E.D.N.Y. 2005) (stating that the import of 18 U.S.C. § 3771(a)(8) is "to promote a liberal reading of the statute in favor of interpretations that promote

victims' interests in fairness, respect, and dignity.").

Adults testifying in court about a traumatic event can benefit from the presence of an appropriately-trained dog in the courthouse. "Participating in courtroom or other legal proceedings is arguably one of the most stressful events that most people experience. It is clear that the presence of an appropriately bred and trained dog can significantly reduce the anxiety associated with these experiences, thereby improving the efficiency and quality of the legal process." James C. Ha, PhD, CAAB; *see* https://courthousedogs.org/legal/dogs-reduce-stress (last visited May 30, 2023). Research shows that human-animal interactions can have both psychological and physiological benefits. "Such studies have shown that the mere presence of a friendly animal can result in decreased anxiety and lessened sympathetic nervous systems arousal. Benefits include reduced blood pressure, lowered heart rate, a decrease in depression, increased speech and memory functions, and heightened mental clarity." *Canines in the Courtroom*, GPSolo, July/August 2009, at 54. If adults view testifying as traumatic surely children are traumatized by testifying as well. Having a trained facility dog nearby – in the courthouse – would clearly assist the victim in this case with her ability to provide testimony.

Child victims of sexual abuse are afforded additional rights in 18 U.S.C. § 3509 because Congress recognized that testifying in court presents severe challenges for "a person under the age of 18" and who is, or is alleged to be, a victim of sexual abuse. 18 U.S.C. § 3509(a)(2). Section 3509 permits anyone under the age of 18 who

is a victim of sexual abuse to testify using alternatives such as two-way closed-circuit television or videotaped deposition. 18 U.S.C. § 3509(b)(1), (2). The law recognizes that a child's fear of testifying may be so great that the child may be altogether incapable of testifying, and that providing live, in-court testimony may cause them to "suffer emotional trauma." 18 U.S.C. § 3509(b)(1)(B)(i) and (ii). Exploitation of a child, in any form, may have severe and traumatic physical and emotional effects on that child. Testifying in court can re-victimize a child by causing them to re-live the experience of their exploitation and abuse.

In March 2017, the American Academy of Pediatrics issued a policy statement that testifying in court can make children anxious and therefore impair their ability to speak. This is especially true for children like the child victim in this case who suffers from selective mutism. Despite its name the child victim is not able to select when the mutism occurs, instead it simply occurs in select situations beyond the child victim's control. According to the policy statement, "studies have clearly established that children experience anxiety surrounding court appearances and that the main fear is facing the defendant. Other fears include being hurt by the defendant, embarrassment about crying or not being able to answer questions, and going to jail. The more frightened a child is, the less she is able to answer questions." *See* Exhibit 1, *Policy Statement of the American Academy of Pediatrics*. The policy statement, citing www.courthousedogs.com, approves of the recent use of facility dogs as a means of reducing stress for testifying children. *Id*.

As one district court aptly put the issue, "Therapy dogs may aid sexual assault victims. Benefits include decreased anxiety, reduced blood pressure, lower heart rate, decrease in depression, increased speech and memory functions, and heightened mental clarity. The use of therapy dogs in court is an emerging area of the law and one that has garnered academic attention." *United States v. Jackson,* No. 3:20-CR-76 DRL-MGG, 2021 WL 1570613, at *7 (N.D. Ind. Apr. 22, 2021) (citing Jessica L. Jones, *A Canine in the Courthouse? Trust Me, You Need One*, 42 Pa. Law. 50 (2020); Emily L. R. Thelwell, *Paws for Thought: A Controlled Study Investigating the Benefits of Interacting with a House-Trained Dog on University Students Mood and Anxiety*, MDPI Animals J. (Oct. 21, 2019), https://www.mdpi.com/2076-2615/9/10/846; and Casey Holder, Comment, *All Dogs Go To Court: The Impact of Court Facility Dogs As Comfort For Child Witnesses on a Defendant's Right to a Fair Trial*, 50 Hous. L. Rev. 1155 (2013)).

The United States anticipates that, if the Court authorizes its request, Melody L. Tiddle, trained FBI canine handler, and Tiddle's courthouse facility dog, Gio, will join the prosecution team. *See* Exhibit 2, *Photo of Gio*. Tiddle is employed as a victim assistance rapid deployment team analyst in the FBI Office for Victim Assistance (OVA), in Washington, D.C. Gio is a courthouse facility dog. He was trained as a facility dog by Assistance Dogs of the West (ADW). *See* Exhibit 3, *Certification Card*. ADW is an assistance dog organization established in 1995 that is accredited by Assistance Dogs International (ADI). *See* Exhibit 4, *ADI Facility Dog Standards.*

ADW trains dogs for multiple purposes, including as service dogs (primarily for mobility assistance); medical alert dogs; skilled support dogs for combat injuries; PTSD support dogs; traumatic brain injury and other physical and emotional disability support dogs, as well as dogs for facility teams. Facility teams are made up of the dog and a dog handler, who is also trained by the training organization. Facility dogs carry most of the skills of service dogs, especially public access training, socialization, as well as specialized skills for whatever type of facility the dog will be working in. Since 2010, ADW has placed 26 dogs in criminal justice and family court settings, district attorney's offices, child advocacy centers, and with court-appointed special advocates (CASAs).

Tiddle's dog, Gio, was trained for almost two years prior to placement and knows more than 90 cues. ADW determined that his temperament was best suited to work in a public setting and placed him at the FBI OVA to work as a facility dog. He responds to national mass casualties as a member of the Victim Services Response Team and typically works with vulnerable victims in the Washington, D.C. area (including D.C., Maryland, Virginia and Pennsylvania). Gio's greatest strength is his ability to calm and comfort others in stressful situations. He is owned and fully insured by the FBI.[1] After Gio's training, Tiddle and Gio passed a public access test that is identical to the one required for service dogs. The public access test ensures the facility dog is "stable, well-behaved, and unobtrusive to the public."

---

[1] If authorized to be present during trial, Gio will not wear any gear with FBI symbols or labels.

Additionally, ADI requires that assistance dogs meet standards of appearance and behavior in public. *See* www.assistancedogsinternational.org/standards/assistance-dogs/assistance-dogs-in-public.

Gio has successfully worked as a facility dog at several recent deployments, including the San Bernardino Shooting (California, 2015), Pulse Nightclub Shooting (Florida, 2016), Baton Rouge Police Shooting (Louisiana, 2016), Fort Lauderdale Airport Shooting (Florida, 2017), Las Vegas Shooting (Nevada 2017), Tribeca Truck Attack (New York, 2018), Santa Fe High School Shooting (Texas 2018), Stoneman Douglas School Shooting (Florida 2018), and Robb Elementary School Shooting (Florida 2022). Gio has also provided support to several vulnerable victims during forensic interviews, briefings, special operations, pre/post court testimony and during sentencing/delivery of impact statement.

Additionally, Gio has done field case work, assisting with child forensic interviews, hostage reunifications, victim/family briefings, personal effects return, and special operations involving child human trafficking. As part of his training, Gio also worked in the Santa Fe County Courthouse of the First Judicial District Court of New Mexico in August 2017 where he did a practice session in a courthouse, including a courtroom.[2] When accompanying a witness or victim, Gio generally lies quietly at the

---

[2] If authorized to be present during trial, Tiddle and Gio will travel to Orlando, Florida, a day prior to the beginning of trial to participate in the child victim's trial prep. In the event the Court holds a hearing or oral argument on this motion the United States asks that Gio be allowed to be present in the courtroom during any such pretrial hearing so that the Court may make its own observations.

witness's or victim's feet and is trained to not disturb the proceeding. It is the expectation of the United States that Gio's presence during the child victim's testimony would not only provide comfort for the child victim but would facilitate testimony with less interruption and avoid the need for numerous breaks during the testimony.

The United States Marshal Service (USMS) was consulted prior to the filing of this request with the Court. The Acting Supervisory Deputy United States Marshal, Shamia Pittman, represented to the undersigned that her agency has no objection to the use and presence of Gio in the courthouse, including the witness preparation room, throughout the jury trial. The Acting Supervisory Deputy Marshal also offered no objection to the use and presence of Gio in the courtroom,[3] during the testimony of the child victim, if authorized by the Court.

While dogs are generally not allowed in federal buildings, *see* CFR § 102-74.425, there is substantial precedent on which this Court can rely in allowing crisis response canine, Gio, to enter and remain in the courthouse building on the dates of the child victim's testimony. Courthouses and child advocacy centers across the country use therapy dog programs to provide victims, most frequently children, emotional support through trial. *Canines in the Courtroom*, GPSolo, July/August

---

[3] It is not the intention of the United States to hide Gio's presence from the jury; rather, if authorized to use Gio during testimony, the United States intends to ask the Court to make the presence of Gio known during jury selection, in the event Gio would be seen in or near the courthouse during breaks, and/or if he was to shift his body or make any noise during the child victim's testimony. An appropriate limiting instruction can be given to the jury to ensure that no prejudice results from Gio's presence in the courtroom.

2009, at 54-56. In fact, the use of a facility dog during court proceedings in both Alabama and California is codified in statute. California Penal Code § 868.4, which reads, in pertinent part, that child witnesses and adult victims of enumerated crimes – including human trafficking – "shall be afforded the opportunity to have a therapy or facility dog accompany him or her while testifying in court." *Id. See also Spence v. Beard,* 2015 WL 1956436, at *5 (S.D. Cal. Apr. 29, 2015) (therapy dog sat at child's feet and behind the stand during the prosecution's case-in-chief, along with a victim advocate).

Accordingly, numerous courts across the country have authorized the use of assistance dogs in trials and other hearings. The Michigan Court of Appeals specifically held that a Therapy Dogs International therapy dog could accompany a sexual assault victim while she testified.  *People v. Johnson*, 2016 Mich. App. Lexis 781, *10, n.2 (April 19, 2016) (citing with approval other jurisdictions to allow the use of a canine support animal to accompany witnesses at trial). In *People v. Tohom,* 109 A.D.3d 253, 969 N.Y.S.2d 123 (2013), a state appellate court in New York ruled:

> '[Dogs] are such agreeable friends—they ask no questions, they pass no criticisms' (George Eliot, Scenes of Clerical Life [1857]), but do they belong in the courtroom? On this appeal, we examine the question of whether the courts of this state should permit the presence of a therapeutic "comfort dog" in a trial setting when the court determines that the animal may provide emotional support for a testifying crime victim. We conclude that this question should be answered in the affirmative.

109 A.D.3d at 255. In *Tohom,* the trial court found that a 15-year-old victim's testimony was likely to cause her severe stress and allowed a therapy dog to accompany her during her testimony. *Id.* at 269. In *State v. Jacobs*, 2015 WL 6180908 (2015), the Ohio Court of Appeals upheld the trial court's decision to allow a 17-year-old (aged 11-15 at time of the alleged offenses) to have a therapy dog sit at her feet while she testified.

Other courts have also upheld the use of therapy dogs to support victims of sexual assault. *State v. Devon D.*, 321 Conn. 656 (2016) (upholding trial court's decision to allow dog to sit near victim's feet during trial testimony about sexual assault, finding that correct standard was whether the "special procedure . . . will aid the witness in testifying truthfully and reliably"); *see also State v. Jacobs*, Case No. 27545, 2015 WL 6180908, at *6 (Ohio Ct. App. Oct. 21, 2015) (finding no abuse of discretion in allowing dog to accompany 17 year-old victim during testimony); *State v. Hasenyager*, 67 N.E.3d 132, 134 (Ohio Ct. App. June 22, 2016) (finding no abuse of discretion in allowing use of facility dog during 13 year-old victim's testimony); *State v. Reyes*, 505 S.W.3d 890, 895 (Tenn. Crim. App. 2016) (finding no abuse of discretion in allowing use of dog to aid ten year-old sexual assault victim); *People v. Chenault*, 175 Cal. Rptr. 3d 1, 6 (Cal. Ct. App. 2014); *State v. Dye*, 309 P.3d 1192, 1196 (Wash. 2013); *People v. Johnson*, 889 N.W.2d 513, 524 (Mich. Ct. App. (2016) (finding that use of a support animal was more neutral than use of a support person in aiding six year-old victim); *Smith v. State*, 491 S.W.3d 864, 874 (Tex. App. 2016); *State v. Millis*, 242 Ariz. 33, 42,

391 P.3d 1225, 1234 (Ariz. Ct. App. 2017) (allowing dog to sit next to victim in courtroom gallery but not at the witness stand).

There is no federal equivalent to the state statutes, but this is a rapidly evolving issue of law. Some federal district courts have allowed the use of a facility dog to assist victims at trial either by being in the courthouse during trial in a separate room or at the witness stand during the victim's testimony. *See United States v. Rick Lee Evans,* 1:14-cr-333-AKK-JEO (U.S. District Court for the Northern District of Alabama, 2016) (aggravated sexual assault case involving a 12 year old victim where the court allowed for an animal-assisted therapy dog in the witness room of the courthouse during trial); *United States v. Martin Renteria*, 7:20-cr-355-DC, (U.S. District Court for the Western District of Texas, 2021) (sexual assault and production of child pornography case involving a 16 year old victim and a 12 year old victim where the court allowed a facility dog at the witness stand during the victim's testimony); *United States v. Rayevon Deschambault*, 2:19-cr-187-JAW (U.S. District Court of Maine, 2023) (production of child pornography involving an 18 year old victim where the court allowed a facility dog in the courthouse in a conference room during the trial); *United States v. Jeffrey M. West*, 2:19-cr-20060-MMM-EIL (U.S. District Court for the Central District of Illinois, 2020) (production of child pornography involving an 11-year-old victim where the court allowed a facility dog in the courthouse in a separate room during the trial).

The undersigned counsel is unaware of any previous instance in the Middle District of Florida where a party has requested a facility dog to assist a witness during a trial. However, the Jacksonville Division did allow the use of a comfort dog in the

courthouse witness room before and after a sentencing hearing. *United States v. Wayne Joseph Cavins*, 3:21-cr-23-TJC-MCR (U.S. District Court, Middle District of Florida, Jacksonville Division, 2023). The Defendant was charged with enticement of a minor to produce child pornography, enticement of a minor to engage in sexual activity, and possession of child pornography. *Id.*

The child victim in this case has never had to testify in front of anyone, much less the 12 strangers in the jury. It should go without saying that confronting the person who sexually touched the child victim and telling a courtroom full of strangers about the event will be an extremely stressful event. Additionally, speaking about the most vulnerable moments in the child victim's life in front of a room full of people could be extremely intimidating. Gio's presence will assist the child victim by helping to decrease both anxiety and fear. When the child victim testifies, it will be easier for her to detail the Defendant's conduct if she is composed, rather than distraught. Additionally, Gio's presence will reduce the child victim's anxiety which may keep the selective mutism at bay. The time when Gio is needed the most is when child victim is on the witness stand, not before or after the child victim is subjected to the trauma of testifying in court about the sexual contact inflicted by the Defendant. Gio's presence will give the child victim courage and strength and will do absolutely no harm.

## CONCLUSION

Child victims are afforded great protections when testifying at trial. Per statute a child victim has the right to be accompanied by an adult attendant for the purpose

of providing emotional support to the child during testimony. 18 U.S.C. §3509(i). The court has the discretion to allow the adult attendant to be in close physical proximity to the child during testimony. *Id.* The adult attendant may hold the child's hand or let the child sit in his/her lap. *Id.* However, the adult attendant shall not provide answers to the child or prompt the child in any way. *Id.* In other words, the adult attendant is there to provide emotional support and comfort to the child during testimony. The United States submits that a crisis response canine is objectively more neutral than an adult attendant, because the dog cannot talk, make facial expressions, use body language, or otherwise influence the witness or inadvertently comment on the testimony. Allowing a crisis response canine to accompany the child victim at trial is a reasonable accommodation that carries very little risk and will likely make testifying in open court less traumatic.

WHEREFORE, the United States respectfully requests that this motion be granted and that the Court allow the use of a crisis response canine in the witness room before and after the child victim's testimony, and in the courtroom during the Defendant's trial beginning on June 20, 2023.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:    */s/ Courtney D. Richardson-Jones*
       Courtney D. Richardson-Jones
       Assistant United States Attorney
       Florida Bar No.: 91608
       400 W. Washington Street, Suite 3100
       Orlando, Florida 32801
       Telephone:  (407) 648-7500
       Facsimile:   (407) 648-7643
       E-mail: Courtney.Richardson-Jones@usdoj.gov

By:    */s/ Michael P. Felicetta*
       Michael P. Felicetta
       Assistant United States Attorney
       Florida Bar No.: 94468
       400 W. Washington Street, Suite 3100
       Orlando, Florida 32801
       Telephone:  (407) 648-7500
       Facsimile:   (407) 648-7643
       E-mail: Michael.Felicetta@usdoj.gov

**U.S. v. BRIAN PATRICK DURNING      Case No. 6:22-cr-102-WWB-RMN**

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2023, I electronically filed the foregoing with

the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Jeremy Lasnetski, Esq.
Attorney for Defendant

*/s/ Courtney D. Richardson-Jones*
Courtney D. Richardson-Jones
Assistant United States Attorney
Florida Bar No.: 91608
400 W. Washington Street, Suite 3100
Orlando, Florida 32801
Telephone:   (407) 648-7500
Facsimile:    (407) 648-7643
E-mail: Courtney.Richardson-Jones@usdoj.gov