**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

UNITED STATES OF AMERICA

v.　　　　　　　　　　　　　　　　　　CASE NO.: 6:22-cr-102-WWB-RMN

BRIAN PATRICK DURNING

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT II**

The Defendant, Brian Patrick Durning, by and through counsel, Jeremy Lasnetski of Lasnetski Gihon Law, respectfully submits this renewal of Motion for Judgment of Acquittal on Count II, pursuant to Federal Rule of Criminal Procedure 29(a).

**BACKGROUND**

On September 21, 2022, a grand jury returned a three count indictment against Mr. Durning charging him with Count I: Abusive Sexual Contact with a Child (18 U.S.C. §2244(a)(3)), Count II: Assault Resulting in Substantial Bodily Injury to an Individual who has not Attained the Age of 16 Years (18 U.S.C. §113(a)(7)), and Count III: Assault Resulting in Serious Bodily Injury (18 U.S.C. §113(a)(6)) .  (Doc. 43).

On June 20, 2023, Mr. Durning proceeded to trial.  On June 22, 2023, the jury returned a verdict of guilty of the lesser included offense of assault, as to Count I, guilty of the lesser included offense of assault, as to Count III, and guilty as charged to Count II: Assault Resulting in Substantial Bodily Injury to an Individual who has not Attained the Age of 16 Years.  (Doc. 115).

18 U.S.C. §113(a)(7) requires that the government prove that the listed victim incurred "substantial bodily injury" and that the substantial bodily injury was the result of the assault. The term "substantial bodily injury" is defined in 18 U.S.C. §113(b)(1) as "bodily injury which involves - (A) a temporary but substantial disfigurement: or (B) a temporary but substantial loss or impairment of the function of any bodily member, organ, or mental faculty."

During opening statements, the Government alleged it would prove that, since the offense, the minor victim has had nightmares, was afraid to get on a plane to return home after the offense, has panic attacks, and has a fear of flying.[1] The Government alleged mental and emotional injuries.

During its case-in-chief, the Government offered two lay witnesses to testify regarding substantial bodily injury and causation of that injury - the minor victim (Z.B.) and the minor victim's mother, Ms. Sherretta. During the Z.B.'s testimony, she testified that she had a preexisting condition known as selective mutism. Z.B. testified that selective mutism would come when she was scared, uncomfortable, or nervous. It would make it hard for her to talk. She would stutter a lot. Sometimes she could not talk at all. Z.B. testified that it happens if she is in front of a group of people or sometimes in front of one person.

Z.B. testified that after the assault, she was scared and felt nauseous. Z.B. testified that she slept in the same bed as her mother. She testified that she stayed in a lot and didn't want to wear a bathing suit. She testified that she didn't want to fly back to

---

[1] At the time of filing this motion, the transcripts of the trial proceedings were not available, therefore undersigned counsel relies on notes and recollection of the facts elicited at trial.

Los Angeles, although she felt a little bit better because she was with her family. Z.B. testified that her mother continued to sleep with her when she returned home and she still had nightmares. When she went to a pediatrician, Z.B. didn't want to wear a gown and didn't like the pediatrician, who was a female, touching her. Z.B. testified that she never liked going to the pediatrician, but it wasn't as bad before the assault.

Z.B. testified that she had difficulties in school after the assault and that she had good grades before, usually As and and one B. She testified on cross examination that although her grades dropped during the school year after the assault, she finished the year with all A's and one B. Z.B. testified that she would have trouble going to school and that she used to wake up and feel nauseous and would start crying and throwing up. She testified that she missed a lot of days at school. Z.B. testified that she was stressed about her grades, so her anxiety got better after school was out. However, she testified that she was really stressed about testifying at the trial.

Z.B. testified that after the assault, she started seeing a counselor to talk about the assault. She initially saw the counselor twice a week, but has since reduced the visits to once a week. Z.B. testified that she uses a therapy dog during counseling. She testified that on one occasion, a male substitute teacher was upset with her for lack of motivation and when the teacher sat down and put his hand on her knee and shoulder, she started crying. Z.B. also testified to an occasion where a man sat next to her at a movie theater and she started to cry. She testified that she thought it was Mr. Durning.

On cross examination, Z.B. testified that she had no trouble talking to male officers who interviewed her after the assault. She testified that she went to a water

park a few days after the assault and wore a bathing suit, but she wore a rash guard to cover her upper body. Z.B. testified that she had a panic attack prior to taking a flight to come testify at trial, but she did not have a panic attack on the flight. Z.B. testified that prior to the assault, she could not order her own food on the plane because she had a hard time talking to strangers. Z.B. testified that her family did not cut their vacation short to travel back home after the assault.

Z.B.'s mother, Stacey Sherretta also testified regarding Count II's substantial bodily injury element. Ms. Sherretta testified that Z.B. does well in school and is a happy kid. Ms. Sherretta testified that Z.B has selective mutism, which sometimes causes her to go completely mute when she is uncomfortable.

Ms. Sherretta testified that Z.B. wanted her clothes and shoes washed after the assault. She immediately wanted to shower and had Ms. Sherretta help her. Ms. Sherretta testified that since the assault, Z.B. didn't want to do things with her friends, have sleepovers, take trips to the beach or go horseback riding. Ms. Sherretta testified that Z.B. didn't want to wear bathing suits and would wear oversized clothes and hoodies with the hood up.

Ms. Sherretta testified that Z.B. became very combative and didn't want to talk about anything that happened. Specifically, Z.B. would get combative when Ms. Sherretta would try to get Z.B.'s friends to come over. Ms. Sherretta testified that Z.B. has developed tics since the assault, including blinking her eyes, a vocal tic and a thing that she would do with her neck. Z.B. did not testify that she developed a tic and there were no visible tics during her testimony.

Ms. Sherretta testified that Z.B. missed up to forty days of school, would vomit in the morning and there would be a huge conflict between Z.B. and Ms. Sherretta about going to school. Ms. Sherretta testified that she would drop Z.B. off at school with the counselor. Ms. Sherretta testified that Z.B. was getting C's, D's, and F's and Z.B. worked with tutors and the school to get her grades up, including having tardies and absences excused. Ms. Sherretta did not expand on any other accommodations the school allowed. Ms. Sherretta also did not expand on how many bad grades Z.B. received or whether those grades were on quizzes, homework assignments, or tests.

Ms. Sherretta testified that Z.B. had a panic attack when her female pediatrician used a stethoscope. Z.B. testified that she saw the pediatrician, but she did not testify that she had a panic attack. Ms. Sherretta testified that Z.B started cutting herself last month, almost a year after the assault. Although Z.B. bled, Ms. Sherretta did not call 911 or take Z.B. to a doctor, psychiatrist, or psychologist. Ms. Sherretta testified that Z.B. obtained counseling, however, she did not see a psychiatrist or psychologist. Ms. Sherretta testified that Z.B. had only two panic attacks when interacting with males in the year between the assault and the trial.

After the Government rested, Mr. Durning moved for a judgment of acquittal arguing that, taken in the light most favorable to the Government, the evidence was insufficient (A) to establish "substantial bodily injury" or (B) to establish that substantial bodily injury resulted from the assault. The Court stated that although it was a close call, the motion was denied. Mr. Durning renewed the motion at the close of the Defense case.

**MEMORANDUM**

Federal Rule of Criminal Procedure 29(c) authorizes a defendant to renew a motion for judgment of acquittal within 14 days after a guilty verdict. When considering a motion for judgment of acquittal, the Court must view the evidence in the light most favorable to the government. *United States v. Sellers*, 871 F.2d 1019, 1090 (11th Cir. 1989).

Count II - Assault Resulting in Substantial Bodily Injury to an Individual who has not Attained the Age of 16 Years requires the jury to find that the listed victim suffered substantial bodily injury and that the substantial bodily injury was the result of the assault. (Doc. 114, pg. 19 - Jury Instruction on Count II). Therefore, the Government must prove both that Z.B. suffered substantial bodily injury and that the injury was caused by Mr. Durning's act.

Typically, a substantial bodily injury and its cause can be easily proven through lay person testimony. For example, if a victim suffers a gunshot wound, a lay witness can testify that the victim suffered a substantial physical injury (i.e. gunshot wound) and the cause of the injury is directly attributable to the assault (defendant pulling a trigger of a firearm). This is not so for emotional or mental trauma. Neither the extent of the injury nor the causation are readily observable.

This is self-evident in the instant case where Z.B. had a pre-existing condition that the Government claims was exacerbated by the assault. However, the evidence submitted by the Government is insufficient to establish either substantial bodily injury or that the assault caused the injury, characterized by the Government as an aggravation of a preexisting injury.

**Lack of Evidence of Substantial Bodily Injury**

The statutory definition of "substantial bodily injury" leaves much to be desired as it fails to provide any guidance on what constitutes "substantial" loss or impairment of the function of any mental faculty. The word "substantial" must have some meaning, as it modifies the terms "loss" and "impairment." Yet, the definition provides no examples or any direction on how much loss or impairment is required to be substantial. To be sure, "[t]he "substantial bodily injury" requirement remains difficult to satisfy…" *United States v. Bryant*, 579 U.S. 140, FN #5 (2016). But where does one place the minimum threshold required to legally satisfy the definition? Is a five minute panic attack sufficient? A short duration of crying? One nightmare? Black's Law Dictionary defines the term "substantial" as, "[b]eing significant or large and having substance."[2] This definition, likewise, provides little insight into the minimum threshold that the government must meet. The case law also provides little insight.

Z.B. and her mother provided little more than anecdotal incidents of manifestations caused, according to their own testimony, by anxiety. Yet, anxiety manifests itself in millions of American's lives each and every day. Between 2001-2004, an estimated 31.9% of adolescents in the United States suffered from an anxiety disorder.[3] Common symptoms of an anxiety disoder include nervousness, having a sense of impending danger, panic or doom, increased heart rate, breathing rapidly, trembling, feeling week or tired, trouble concentrating, having trouble sleeping,

---

[2] https://thelawdictionary.org/substantial/#:~:text=Being%20significant%20or%20large%20and%20having%20substance.

[3] National Institute of Mental Health https://www.nimh.nih.gov/health/statistics/any-anxiety-disorder#:~:text=An%20estimated%2031.1%25%20of%20U.S.,some%20time%20in%20their%20lives.

gastrointestinal problems, difficulty controlling worry, and having the urge to avoid things that trigger anxiety.[4]

Z.B.'s testimony established that she is suffering from common symptoms of an anxiety disorder. The Government has failed to prove that she has suffered *substantial* bodily injury in the form of a loss or impairment to her mental faculty. The Government failed to elicit testimony that Z.B. has suffered post-traumatic stress disorder, clinically diagnosed depression, or an equivilent substantial bodily injury to the mental faculty. The Government failed to produce psychiatric, psychological, or medical evidence to establish a substantial bodily injury. Z.B's testimony and that of her mother, Ms. Sherretta, alone are insufficient to establish a substantial bodily injury.

## Lack of Evidence of Causation

In addition to failing to prove that Z.B. suffered substantial bodily injury, the Government also failed to establish that any substantial bodily injury was caused by Mr. Durning act. The only evidence provided by the Government was anecdotal in nature. Neither Z.B., nor Ms. Sherretta, specifically testified to causation and neither would be qualified to establish that any mental anguish suffered by Z.B. since the assault was caused by Mr. Durning's act as opposed to her pre-existing anxiety condition in combination with natural teenage adolescent developmental issues and other known and unknown variables.

For example, "school refusal" is a common condition in teens who exhibit anxiety issues.[5] Z.B. testified that she has had anxiety issues her entire life. Ms. Sherretta

---

[4] Mayo Clinic, "Anxiety Disorders"
https://www.mayoclinic.org/diseases-conditions/anxiety/symptoms-causes/syc-20350961
[5] School refusal: When a child won't go to school
https://www.health.harvard.edu/blog/school-refusal-when-a-child-wont-go-to-school-2018091814756

8

testified that prior to the assault, Z.B. was unable to speak to her class through Zoom because of her anxiety. Z.B.'s symptoms prior to the assault are similar to symptoms after the assault. The Government failed to establish that Z.B.'s anxiety over going to school was caused by Mr. Durning's act, as opposed to her preexisting anxiety condition in combination with the natural stresses and growing pressures facing teenagers.

Additionally, the Government provided no evidence that since the assault, Z.B. has been diagnosed with any additional disorders, such as PTSD, an eating disorder or depression. There was no evidence that Z.B. has been placed on any medications that she was not previously taking. No psychiatrist, psychologist or other expert testified at trial. Ms. Sherretta testified that Z.B. saw a therapist after the assault, however, she never saw a psychiatrist, psychologist, or other mental health expert. One would expect that a teenager with a preexisting anxiety disorder who suffered substantial bodily injury in the form of loss or impairment to the mental faculty would, at a minimum, seek and require psychiatric or psychological help.

The Government provided no evidence that any symptoms exhibited by Z.B. were caused by Mr. Durning's act as opposed to manifestations stemming from her preexisting anxiety disorder or other influences. In fact, evidence supported the conclusion that Z.B.'s symptoms were not caused by Mr. Durning's act. Ms. Sherretta testified that Z.B. started cutting herself approximately one month prior to her testimony at trial. This was more than eleven months after the assault. Coincidentally, it was also just prior to the end of the school year. Z.B. testified that her anxiety increased during the school year because of concern for her grades. Although Ms. Sherretta testified that her grades fell after the assault, no evidence was submitted to establish that her

grades fell *because* of the assault.  Z.B.'s grades also fell after turning 13 years old and entering the 8th grade, both of which cause anxiety in individuals as their bodies and minds are rapidly changing, school bullying becomes more prevalent and intensified and school work becomes increasingly difficult.  This is exacerbated for a teenager who already suffers from a preexisting anxiety disorder.

      Most notably, Z.B. was able to take the witness stand and testify about the very thing the Government claims has caused substantial bodily injury.  Although she had a preexisting condition that caused her to shut down when speaking in front of people in a highly anxious situation, she did not shut down on the witness stand when answering very personal questions by the prosecutor and defense counsel.  Z.B. did not ask for a break, did not go mute, did not breakdown, and was able to answer the questions articulately.  Although the assault took place on an airplane, Z.B. was able to fly on two more occassions and was planning on flying again after the trial.  Although the assault was committed by an adult male, she testified that she has been able to have meaningful and close relationships with many adult males.

      In short, the Government has failed to produce substantial, competent evidence that Z.B. incurred substantial bodily harm or that any substantial bodily harm was caused by Mr. Durning's act.  Without expert psychiatric or psychological testimony, the jury was left to speculate that Z.B. suffered substantial bodily injury and that it was caused by Mr. Durning's act, as opposed to being caused by a preexisting anxiety condition in combination with developmental issues related to adolescence, issues at home, and any other list of variables.

## CONCLUSION

The Government failed to submit sufficient evidence that Z.B. incurred "substantial bodily injury" or that any substantial bodily injury was caused by Mr. Durning's act.  The Defendant respectfully requests that this Court grant Mr. Durning's Motion for Judgment of Acquittal as to Count II.

**WHEREFORE,** the Defendant, BRIAN PATRICK DURNING, respectfully requests that this Honorable Court grant Mr. Durning's Motion for Judgment of Acquittal as to Count II.

            Respectfully submitted,

By: *s/Jeremy Lasnetski*
   JEREMY LASNETSKI
   Florida Bar No. 512524
   Lasnetski Gihon Law
   121 W. Forsyth St., Ste. 520
   Jacksonville, Florida 32202
   Telephone: (904) 642-3332
   Facsimile: (904) 685-4580
   Email:Jeremy@lglawflorida.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Michael Felicetta, Esquire, Assistant U.S. Attorney, United States Attorney's Office, and Courtney Richardson-Jones, Assistant United States Attorney, United States Attorney's Office.

            *s/Jeremy Lasnetski*
            Jeremy Lasnetski, Esquire
            Florida Bar No.:  512524
            Lasnetski Gihon Law
            121 W. Forsyth St., Ste. 520
            Jacksonville, Florida 32202
            Telephone: (904) 642-3332

Facsimile: (904) 685-4580
Email:Jeremy@lglawflorida.com