UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                                  CASE NO.: 6:22-cr-102-WWB-RMN

BRIAN PATRICK DURNING

### SENTENCING MEMORANDUM

The Defendant, BRIAN PATRICK DURNING, by and through counsel, Jeremy Lasnetski, Lasnetski Gihon Law, hereby files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining the type and length of sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

### INTRODUCTION

On September 21, 2022, a grand jury returned a superseding three count indictment against Mr. Durning charging him with Count I: Abusive Sexual Contact with a Child (18 U.S.C. §2244(a)(3)), Count II: Assault Resulting in Substantial Bodily Injury to an Individual Who Has Not Attained the Age of 16 Years  (18 U.S.C. §113(a)(7)), and Count III: Assault Resulting in Serious Bodily Injury (18 U.S.C. §113(a)(6)) .  (Doc. 43).

On June 20, 2023, Mr. Durning proceeded to trial.  On June 22, 2023, the jury returned a verdict of not guilty to Count I - Abusive Sexual Contact and guilty of the

1

lesser included offense of simple assault. (Doc. 115) As to Count II, the jury returned a verdict of guilty of Assault Resulting in Substantial Bodily Injury to an Individual Who Has Not Attained the Age of 16 Years. (Doc. 115) As to Count III, the jury returned a verdict of not guilty of Assault Resulting in Serious Bodily Injury and a verdict of guilty of the lesser included offense of simple assault (Doc. 115). Mr. Durning is scheduled for sentencing on Tuesday, September 26, 2023 at 3:00 PM.

The Presentence Investigation Report (hereinafter "PSR") indicates that Mr. Durning's total offense level is 11, his criminal history category is I and the guideline imprisonment range is 8 months to 14 months. Mr. Durning's guideline range falls within Zone B, which allows the entirety of the sentence to be served through home detention or community confinement. USSG §5C1.1  Mr. Durning was remanded into custody on June 22, 2023 and will have approximately three (3) months credit time served at the time of his sentencing hearing.

### **APPLICATION OF 3553(a) FACTORS**

The Eleventh Circuit adopted a two step sentencing procedure in *United States v. Tally*, 431 F.3d 784 (11th Cir. 2005). First, the district court must consult the Guidelines and correctly calculate the applicable range. *Id.* Second, the district court must consider ten factors in determining a reasonable sentence. *Id.* Those ten factors are listed in 18 U.S.C. §3553(a).

The ten factors the Court should consider include the nature and circumstances of the offense and history and characteristics of the Defendant, the need for the

sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. The Court in *Tally* determined that the sentencing guidelines, although central to the sentencing process, cannot be held, per se, reasonable. *Id.*

Based on the above-listed §3553(a) factors and the following facts and reasons, Mr. Durning respectfully requests a guideline sentence to be served by home detention, in accordance with USSG 5C1.1(e)(3).

**History and Characteristics of Defendant**

Brian Patrick Durning is 52 years old with three prior arrests each of which, in addition to the instant offense, have involved alcohol. On May 29, 1997, at the age of 25, Mr. Durning was arrested for driving under the influence (DUI) of alcoholic beverages. Eight years later, Mr. Durning was again arrested for DUI at the age of 33. Thirteen years later, Mr. Durning was arrested for disorderly conduct based on his level

of intoxication.  Four and one half years after the disorderly conduct arrest, Mr. Durning was arrested on the instant offense, which also involved alcoholic beverages.

Other than Mr. Durning's arrests involving the use of alcohol, Mr. Durning has been a law abiding contributing member of his community.  He has a vast network of family and friends who have loved and supported him throughout his life and throughout this case.  Unusual for a person of his age, Mr. Durning has maintained a great number of close lifelong relationships that have been nurtured to this day.  We have submitted several character letters to articulate what Mr. Durning has meant to those closest to him.  For example, when Yvette Laboy, a friend of Mr. Durning's for 25 years,  fell ill with systemic lupus, Mr. Durning flew to be by her side.  When Tania Carmenate needed help with her father's 90th birthday party and then again for her boyfriend's funeral, Mr. Durning answered the call to provide support for her at those landmark times in her life.

Mr. Durning has also maintained a healthy, positive relationship with Karina Pena, his ex-girlfriend and Marian Fernandes Durning, his ex-wife.  Ms. Fernandes Durning came from out of town to Mr. Durning's trial in support of him and both former partners have provided letters to the Court to articulate their feelings for Mr. Durning.

In addition to the strong family and friendship bonds Mr. Durning has forged, he has also worked hard to develop himself professionally.  He obtained a high school degree, an Associate of Arts degree at Seminole State College and then a Bachelor of Science degree at the University of Florida.  In 2021, at the age of 51, after holding

4

various jobs, mostly in the fitness industry, Mr. Durning switched gears and obtained a real estate license and a job at Keller Williams earning approximately $54,000 a year.

Mr. Durning's history and characteristics suggest that he has lived a full and productive life while developing, nurturing and maintaining deep and meaningful relationships with a large number of people. His only involvement with the legal system has come in combination with the use of alcohol.

While awaiting trial, Mr. Durning voluntarily sought counseling at The Livingood Center at Costa Mesa, California from September 2022 until he was remanded into custody after the trial on June 22, 2023. Mr. Durning looks forward to working on himself both personally and professionally so he never finds himself in a similar situation. Mr. Durning is amenable to treatment for his significant issues that have arisen from the excessive use of alcohol.

### Nature and Circumstances of Offense

The nature and circumstances of the offense have been a contested issue in this case which led to a trial for a jury to determine the facts. Mr. Durning has accepted responsibility for his inappropriate actions which included becoming intoxicated on a plane and acting inappropriately towards several passengers, including Z.B. However, Mr. Durning has always denied touching Z.B. in a sexual manner. At trial, Z.B.'s testimony regarding her allegation of abusive sexual contact was contradicted with the testimony of the passenger that sat directly next to her on the plane, Sharon Joseph. Ms. Joseph testified that she was awakened by Mr. Durning's cough and that she saw

Mr. Durning's hand come "quickly away from her thighs." Doc. 128: Trial Transcript, Vol.1, pg. 99, ln. 6-8; 24-25. She did not see Mr. Durning touch Z.B. sexually. This testimony directly contradicted the testimony of Z.B.[1]

It is uncontradicted that Z.B. had suffered from a pre-existing anxiety disorder, called Selective Mutism. Z.B. was in a heightened state of anxiety when she was separated from her mother and brother, flying on a cross-country trip, and was seated next to Mr. Durning, who is over 6 feet tall and was visibly intoxicated. Multiple witness' testimony showed that Mr. Durning had an odor of alcoholic beverage on him, was served wine during the flight, had his zipper unbuttoned, was sitting with his legs spread open, was touching other passengers, and was otherwise acting intoxicated.

As to count I, the jury found Mr. Durning not guilty of Abusive Sexual Contact and guilty of the lesser included offense of Assault. Because the only allegation of any sexual contact was the basis for Count I, the jury acquitted Mr. Durning of having any sexual contact with Z.B. There was no evidence that Mr. Durning touched Z.B. in any other sexual manner other than the alleged penetration and the jury acquitted Mr. Durning of that conduct. Therefore, Mr. Durning was acquitted of any sexual conduct.

As to Counts II and III, the jury found Mr. Durning guilty of Count II as charged, which involves a simple assault that caused temporary injury, but not guilty of Count III, which required a permanent injury. Therefore, the jury must have believed that Mr.

---

[1] Z.B.'s trial transcript is under seal and was unsealed for the limited purpose of providing access to the United States Attorney's Office and undersigned counsel. For that reason, undersigned counsel will not quote from Z.B.'s trial transcript, but will direct the Court to Doc. 130: Trial Transcript Vol. 2, pg. 41, ln. 7-17.

Durning committed an simple assault on Z.B. and caused an injury, but that the injury was only temporary. As to Count III, the jury found Mr. Durning guilty of the lesser included offense of Assault.

Based on the jury's verdict, it is clear that the jury believed that Mr. Durning, in his state of intoxication, assaulted Z.B. by touching her person and as a result of that assault, Z.B. suffered a temporary mental injury. This conduct was consistent with the testimony of passenger Tabari Francis, who testified that after Mr. Durning was moved to a seat next to him, Mr. Durning placed his head on Mr. Tabari's shoulder. Doc. 130: Trial Transcript, Vol. 2, pg. 222, ln 12-14. Mr. Durning next placed his hand on Mr. Tabari's hand. Doc. 130: Trial Transcript, Vol. 2, pg 222, ln 15-17. Mr. Durning then interlocked his left leg with Mr. Francis' right leg. Doc. 130: Trial Transcript, Vol. 2, pg. 222, ln. 20-22.

Mr. Durning lacked judgment when he became intoxicated prior to a cross-country flight. He became intoxicated, touched several passengers in an offensive manner, and assaulted Z.B. by touching her person and frightening her in his intoxicated state. The jury found that this behavior (the assault) caused a temporary, but substantial injury to Z.B. Mr. Durning is truly sorry for his actions and how they have negatively impacted Z.B.

### **Use of Acquitted Conduct**

The use of acquitted conduct for sentencing purposes is a highly contested area of law, which is soon destined to be addressed by the United States Supreme Court. As

Justice Sotomayer stated in a recent denial of certiorari on the issue, "[a]s many jurists have noted, the use of acquitted conduct to increase a defendant's Sentencing Guidelines Range and sentence raises important questions that go to the fairness and perceived fairness of the criminal justice system." *Mclinton v. United States*, 600 U.S. ___(2023). Acquittals have long been accorded special weight "treating acquittals as inviolate, even if a judge is convinced that the jury was mistaken." *Mclinton*, quoting *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980).

Although the government typically argues that their burden at sentencing (preponderance of the evidence) is lower than the burden at trial (beyond a reasonable doubt), the courts have found this argument unsettling in light of the possibility that the jury could have found that the witnesses were mistaken or untruthful and that the defendant was innocent of the acquitted crime. *Id*. Procedural fairness also dictates that the government should not have a second chance to convince a judge of what the government could not convince the jury. *Id*.

Finally, the use of acquitted conduct at sentencing would undermine the public's trust in our jury system. *Id*. A juror who rendered jury service faithfully would be shaken to learn that a defendant was sentenced for conduct that the jury as a whole found the defendant not guilty of committing. *Id*.

Despite these major concerns, the Supreme Court decided not to address the issue at this time, but rather to allow the Sentencing Commission to decide the issue first. Justice Kavanaugh, with Justice Gorsuch and Justice Barrett joining, stated, "[a]s

Justice Sotomayor explains, the Court's denial of certiorari today should not be misinterpreted. The use of acquitted conduct to alter a defendant's Sentencing Guidelines range raises important questions.  But the Sentencing Commission is currently considering the issue. It is appropriate for this Court to wait for the Sentencing Commission's determination before the Court decides whether to grant certiorari in a case involving use of acquitted conduct." *Id*.

Mr. Durning was acquitted of Abusive Sexual Contact.  The jury determined that the United States failed to prove beyond a reasonable doubt that Mr. Durning penetrated Z.B. over her clothing.  The jury also acquitted Mr. Durning of Assault with Serious Bodily Injury.  In so doing, the jury determined that the non-sexual assault committed by Mr. Durning did not cause protracted injury, but rather caused a temporary injury.

Based on the jury's verdict, the Court should not consider Z.B's allegations, or the Government's argument, that Mr. Durning had any sexual contact with Z.B., nor should the Court consider any evidence or allegation of a protracted injury.  Such consideration would be a violation of the Fifth Amendment Due Process Clause.

**The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and To Provide Just Punishment for the Offense**

Mr. Durning remained on pretrial release for a year prior to his trial.  He complied with the terms, conditions and restrictions on his liberty for the duration of that time, including restricted travel, a ban on the excessive use of alcohol, a prohibition from

possessing a firearm, a prohibition on international travel, a curfew of 9:00 pm - 6:30 am, electronic monitoring, no contact with minors without a responsible adult present, and alcohol testing and treatment.  Upon return of the jury verdict, Mr. Durning was taken into custody and will have approximately three months credit for time served.  The guidelines call for at least 8-14 months of incarceration, community confinement, or home detention.  A sentence of home detention with alcohol treatment and counseling, would reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense of Assault Resulting in Substantial Bodily Injury to an Individual Who Has Not Attained the Age of 16 Years.

### **Adequate Deterrence**

A sentence of 3 months incarceration followed by a guideline sentence of home detention would afford both general and specific deterrence to criminal conduct.  As evidenced by Mr. Durning's time on pretrial release, he has had no new law violations or violations of pretrial release conditions.  There is nothing in Mr. Durning's background which would suggest that he would commit another criminal offense.  Although he has three prior criminal arrests related to alcohol, they span a timeframe of 27 years and each prior offense was a non-violent misdemeanor.  Mr. Durning has never been arrested for a felony or violent offense, prior to the instant offense.

The requested sentence would also serve as general deterrence as three months in jail followed by home detention, after one year of pretrial release conditions would deter other individuals from committing an assault on a minor that caused substantial

bodily injury, particularly those similarly situated to Mr. Durning who have little to no experience with the criminal justice system and incarceration.

### **Protection of the Public from Further Crimes**

The best indicator of future behavior is past behavior. Mr. Durning had no prior allegations of misconduct with a minor before or after the instant offense. The impetus that led to the interaction between Mr. Durning and Z.B. have been and can continue to be addressed through alcohol counseling. Mr. Durning's lack of record and success on pretrial release suggest that there is no need for incarceration to protect the public from future crimes.

### **The Need to Provide Restitution to the Victim**

Because restitution is mandatory in this case, further incarceration would negatively impact Mr. Durning's ability to repay whatever amount of restitution the Court deems appropriate. Home detention would allow Mr. Durning to obtain and maintain employment, so he is able to provide the restitution to the victim.

### **Restitution**

The United States is seeking $59,260 in restitution in this case, which includes $3,260 for past tutoring, $2,400 in past counseling expenses, $12,000 in future tutoring expenses and $41,600 in future counseling expenses. While Mr. Durning does not object to the Court ordering restitution, Mr. Durning does object to the proposed restitution figure.

Under 18 U.S.C. §3663A, the Court shall order restitution in any case where an identifiable victim has suffered a physical injury or pecuniary loss. Mr. Durning was convicted of an assault which caused substantial bodily injury. Therefore, the Court shall order restitution. "Substantial bodily injury" means "bodily injury which involves (A) a *temporary* but substantial disfigurement; or (B) *a temporary* but substantial loss or impairment of the function of any bodily member, organ, or mental faculty." See 18 U.S.C. § 113(b)(1). The jury specifically found that the victim did not incur serious bodily injury when it found Mr. Durning not guilty of Count III. The term "serious bodily injury" means bodily injury which involves (A) a substantial risk of death, (B) extreme physical pain; (c) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty. 18 U.S.C. §1365(h)(3). The jury, after asking for a definition of the term protracted, was instructed that the term "protracted" meant "lasting for a long time." Doc. 133: Trial Transcript, Vol. 3, pg 221, ln. 5.

The government bears the burden of proving the amount of loss for restitution purposes by a preponderance of the evidence. 18 U.S.C. §3664(e). Because Mr. Durning was convicted of assault which caused temporary injury, restitution for future tutoring and/or counseling would not be appropriate. The jury specifically found that Mr. Durning's assault did not cause protracted injury which lasted a long time. Therefore, the correct amount of restitution, consistent with the jury's verdict, would be $5,660 for past tutoring and counseling sessions incurred in the 12 month period between the offense date and the sentencing date.

## CONCLUSION

Mr. Durning invoked his constitutional right to a trial because he denied that he touched Z.B. in a sexual manner. The jury agreed with Mr. Durning. Mr. Durning has no history of any sexual offenses or allegations and has successfully complied with all terms of his pretrial release for the year leading up to his trial. Based on Mr. Durning's history and characteristics, the nature and circumstances of the offense as elicited at trial, and the other §3553(a) factors, further incarceration would be a greater than necessary punishment.

Mr. Durning's guideline range as calculated in the PSR is 8 - 14 months. The guidelines allow for the entirety of the sentence to be served by home detention. A guideline sentence of home detention would be sufficient, but not greater than necessary, to satisfy the §3553(a) factors.

Respectfully submitted,

By: *s/Jeremy Lasnetski*
JEREMY LASNETSKI
Florida Bar No. 512524
Lasnetski Gihon Law
121 W. Forsyth St., Ste. 520
Jacksonville, Florida 32202
Telephone: (904) 642-3332
Facsimile: (904) 685-4580
Email:Jeremy@lglawflorida.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 19, 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Michael Felicetta, Esquire, Assistant U.S. Attorney,

United States Attorney's Office, and Courtney Richardson-Jones, Assistant United States Attorney, United States Attorney's Office.

*s/Jeremy Lasnetski*
Jeremy Lasnetski, Esquire
Florida Bar No.: 512524
Lasnetski Gihon Law
121 W. Forsyth St., Ste. 520
Jacksonville, Florida 32202
Telephone: (904) 642-3332
Email:Jeremy@lglawflorida.com